## IN EQUITY.—MAY, 1856.

## BENJAMIN F. HARDY *vs.* ELI S. RUGGLES *et als.*
### On Bill of Exceptions.

What is a sufficient description of the goods intended to be mortgaged, in a mortgage of stock in trade.

The mortgage contained a clause referring to a schedule, or bill of items, copy of which was in the hands of each party, Held: that it was not necessary to record the schedule, it not being contained in, or annexed to, the mortgage, and the description of the mortgaged property being sufficiently clear without it.

CHIEF JUSTICE LEE delivered the opinion of the court.

This matter comes before the court on a bill of exceptions taken by the complainant to the ruling of JUDGE ROBERTSON, on a hearing had at chambers on the 21st day of March last.

The exception is to the ruling of the Judge, "That as the schedule referred to in the mortgage annexed to the complainant's petition, was not registered with the mortgage, the registration was incomplete and not a full compliance with the law, and that such registration must embrace the instrument of transfer, with all its appendages, at length; and that where actual notice is relied upon, it must be notice of the schedule as well as the mortgage, and that the complainants must bring home notice of the mortgage and schedule to defendants Field and Goodale."

The mortgage under consideration is as follows:

HAWAIIAN KINGDOM, }
Island of Oahu. }

This indenture, made and entered into this first day of May, A. D. 1854, between Eli S. Ruggles, and Asa G. Thurston, who are co-partners in trade under the name and style of Ruggles & Co., carrying on and doing business as druggists and apothecaries in the city of Honolulu and Island aforesaid (parties of the first part,) and Benjamin F Hardy, (party of the second part,) all of the Island afore

said: *Witnesseth*, that they the parties of the first part, for and in consideration of the sum of eleven thousand five hundred dollars to them in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, do hereby give, grant, bargain sell and convey to him the party of the second part, all their right, title, and interest, in and to their stock in trade now on hand, consisting of various articles usually sold and vended in the business aforesaid, for a more full and complete description whereof, reference is hereby made to a bill of items of which a copy is in the hands of the parties of the first and second part, together with all the incoming stock in trade of every kind and character whatsoever, to have and to hold to him the party of the second part, his heirs, executors, and administrators forever; provided, however, and it is understood and agreed that this deed is upon, the following conditions, that whereas the parties of the first part, are indebted to the party of the second part, in the sum of eleven thousand five hundred dollars, being the unpaid balance of the purchase money of the said stock in trade heretofore sold to them by the party of the second part, for which they have in their co-partnership name of Ruggles & Co., executed to him their four several promissory notes, in writing, each dated on the tenth day of March, A. D. 1854, for the sum of two thousand eight hundred and seventy-five ($2,875) with interest at the rate of twelve per cent per annum, one due at six months after date, one due at twelve months after date, one due at eighteen months after date, and one due at twenty-four months after date, now, if the parties of the first part, shall well and truly pay and satisfy the principal and interest of said notes, as the same shall become due and payable, then this deed shall become void, but should they fail to pay said notes as aforesaid, then the party of the second part shall be at liberty to take possession of said stock in trade, and to sell to the highest bidder, at public outcry, so much thereof, as may be necessary to pay so much of said notes, as may be then due and unpaid, together with all costs, first giving thirty days notice in some newspaper published in the city of Honolulu; and it is further agreed that until breach of this deed by a failure to pay some one of the notes as aforesaid, the parties of the first part shall be permitted to remain in possession of the stock in trade, and continue their business by selling any part thereof; and it is further agreed, that should it become necessary to sell any part of the stock in trade, to meet any payment or payments becoming due on any of said notes, the balance on hand after satisfying such payments and all costs, shall continue and remain in the possession of the parties of the first part, subject to all the conditions of this deed, until the next note shall become due and payable. *In witness* whereof, the parties of the first part have hereto set their hands and seals on the day and year first written.

A. G. THURSTON,        [Seal.]
E. S. RUGGLES,          [Seal.]

The first question presented for our consideration, is that relating to the description of the property mortgaged. It is contended by the learned counsel for the defendants, that the description contained in the mortgage of itself alone, that is, without the aid of the schedule referred to, is loose, vague and insufficient, and such as to render the mortgage void for uncertainty. That the description of the mortgag-

ed property is so general as to have no legal force and effect, and that nothing short of a specific description of the articles mortgaged can avail a mortgagee relying upon a recorded mortgage, while the possession of the property remains with the mortgagor.

The general rule on this subject is, that the description of the property mortgaged must be sufficiently definite to enable it to be identified. But we consider the principle well settled, that it is not essential to the validity of a mortgage of personal property that it should contain a schedule or particular enumeration of the goods, if it be made without fraud, and sufficiently indicate the goods intended to be mortgaged.

The description of the property in this mortgage is certainly a most sweeping one, covering not only all the mortgagor's "stock in trade now on hand," but "all the incoming stock in trade of every kind and character whatsoever," and we would here remark, that while we do not condemn such general conveyances where it is clear they were made in good faith, still we cannot regard them with favor, but, on the contrary, feel bound to scrutinize them jealously, and restrict them to reasonable bounds. We fully concur with the court below, in the opinion that the mortgage is of no validity to bind the incoming stock, unless such new goods are purchased with the proceeds of the sale of those actually mortgaged, and I do not commit myself to the opinion that such a clause would be binding even were the goods so purchased. Where live stock is mortgaged, its natural increase and produce become subject to the mortgage, but that class of cases does not control one like the present. The authorities on this subject are numerous and clear, and I will briefly refer to some of the most prominent.

In the case of Winslow *vs.* Merchants' Ins. Co., 4 Metcalf's R., 306, it was held that the mortgage of a building, "and also such tools and other property as is now contemplated to be placed in said building," with a covenant that the instrument shall be effectual to create a lien on such property, does not create a lien on the property afterwards placed in the building; but is void for uncertainty, as against a mortgagee of the property, whose mortgage is executed after the property is placed in the building.

In Jones *vs.* Richardson, 10 Metcalf's R., 482, it was held that a mortgage of goods which the mortgagor does not own when the mortgage is made, though he afterwards acquires them, is void as against his attaching creditors. Justice Wilde, in delivering the opinion of the court, says, "That a person cannot grant or mortgage property of which he is not possessed and to which he has no title, is a maxim of the law too plain to need illustration, and which is fully supported by all the authorities. It is true that a person may grant personal property of which he is potentially, though not actually, possessed. A man may therefore grant all the wool that shall grow on the sheep which he owns at the time of the grant, but not the wool which shall grow on sheep not his, but which he may afterwards buy."

The same doctrine was fully affirmed in Moody *vs.* Wright, 13 Metcalf, p. 17. This was a mortgage of certain tannery stock, and also whatever stock of every description that might thereafter belong to the mortgagor, wherever situated, and whether manufactured or not, or the proceeds of the same if sold, also all leather that might

thereafter be manufactured from the proceeds of the property then on hand, and in whatever shape the property might thereafter exist, or whatever form it might assume.   Justice Dewey, in delivering the opinion of the court, after a thorough review of the cases bearing upon this point, arrives at the following result:  " The petitioner cannot hold the property in controversy as mortgaged property, because it was not in existence, and therefore not capable of being conveyed in mortgage at the time the mortgage was made."

In the case of Barnard *vs.* Eaton, 2 Cushing, 294, which was a mortgage of all the goods, &c., then in the mortgagor's store, and all which might be substituted for them; provided that until default he might use and sell the mortgaged property, other goods,'&c., of equal value being substituted, it was held the mortgage could not apply to goods not in existence or not capable of being identified at the time it was made, or to goods intended to be afterwards purchased to replace those which should be sold.

A still later and equally strong case, is that of Codman *vs.* Freeman, 3 Cushing, 306.

But, while we are clearly of the opinion that the mortgage is void, so far as it relates to incoming stock, we see no good ground for the argument that it is wholly void on account of the uncertainty of the description of the property mortgaged.   On the contrary, we think the mortgage is valid, so far as relates to the stock on hand at the time of its execution.   That is to say, we are of opinion that the words "all their right, title and interest in and to their stock in trade now on hand, consisting of the various articles usually sold and vended in the business aforesaid," when taken in connection with the first part of the mortgage, which shows the place where the mortgagors were carrying on business, sufficiently indicate the goods intended to be mortgaged, and is therefore a good description.

In the case of Winslow *vs.* Merchants' Insurance Co., 4 Metcalf, 306, already cited, it was held that a mortgage describing the property as all and singular the goods, wares and stock in and about a certain building, with a provision that a schedule of the articles shall be annexed, is valid as to all the articles that can be identified, though no schedule thereof is ever annexed to the mortgage.

A mortgage of " all and singular the stock, tools and chattels belonging to" the mortgagor, " in and about the wheelwright's shop occupied by him," was held to be valid as against attaching creditors, in the case of Harding *vs.* Coburn, 12 Metcalf, 333.

In the case of Pettis *vs.* Kellogg, 7 Cushing, 456, the Supreme Court of Massachusetts reviewed and confirmed the doctrine of its former decisions on this point.   The property mortgaged in this case was described as "all the staves I have in Monterey, the same I had of Moses Fargo," and it appearing that the mortgagor had no staves in Monterey, but had some in the adjoining town which he bought of Fargo, it was held that the first part of the description might be rejected as false, and that the remainder was sufficient to pass the property.   See also Brinley *vs.* Spring, 7 Greenleaf, 241, note (*b*) and 2 Hilliard on Mortgages, 194, where the principal authorities are referred to.

We now come to the final point, namely, whether the schedule referred to in this mortgage should have been recorded in order to make

a full compliance with the registry law. The language of the mortgage in reference to the schedule is as follows, viz: "for a more full and complete description whereof," (that is of the stock in trade) "reference is hereby made to a bill of items, of which a copy is in the hands of the parties of the first and second part."

We entirely agree with the general doctrine announced by the court below, that when the schedule is contained in the mortgage, or annexed thereto, or in any other way clearly made a part of the instrument, so as to make a reference thereto necessary to render the description of the mortgaged property certain and valid, then it should be recorded with the mortgage, for otherwise it would not give effectual notice to all concerned of what was intended to be conveyed. But, upon mature reflection, we are of the opinion that in the case before us, the reference to the schedule, or bill of items, does not necessarily make it a part of the mortgage, because the general description which precedes that reference is sufficient to give effectual notice of the property which was intended to be conveyed, and therefore it was not necessary that it should be recorded. The object of the schedule, it strikes us, was rather to fix the valuation of the various articles named therein, than to effect any other purpose. The main case bearing upon this point, is that of Winslow *vs.* Merchants' Ins. Co., already cited, where it was objected to the mortgage that it was invalid because there was no schedule annexed, according to a stipulation contained in it. Chief Justice Shaw, in delivering the opinion of the court, said, " that it was good and available for all the articles in the shop at the time it was executed, so far as they remained and could be identified, although no schedule was annexed." We do not wish to be understood, in giving our opinion in this matter, as going to the full length of the decision in that case.

In the case of Sawyer *vs.* Pennell, 19 Maine R., 167, referred to in Brinley *vs.* Spring, 7 Greenleaf, 241, (note *b.*) and 2 Hilliard on Mortgages, 266, it was held that, although a mortgage of personal property need not contain a specific schedule, in order to be valid, yet if it does contain such a schedule, so as to make it clearly a part thereof, the schedule must be recorded. We regret that we have not the whole case before us, but as we understand it, we regard the doctrine laid down therein as not conflicting with our opinion, but on the contrary as sustaining it.

Being of opinion that it was unnecessary to record the schedule, we sustain the exceptions so far as they relate to that point.